UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRIE THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:17-cv-00584 CKD<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. ECF Nos. 7 and 17. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born January 16, 1960, applied in 2013 for Title II and XVI disability benefits, alleging disability beginning April 4, 2010, which she amended at the hearing to February 1, 2012. Administrative Transcript ("AT") 229-262; see AT 12, 37. Plaintiff alleged she was unable to work due to hypertension, anxiety, and lumbar spine and cervical spine impairments.

1

AT 305. In a decision dated December 17, 2015, the ALJ determined that plaintiff was not disabled.[1] AT 12-24. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since February 1, 2012, the alleged onset date.
>
> 3. The claimant has the following severe impairments: lumbar disc protrusion and stenosis; cervical spine spondylosis; carpal tunnel syndrome; status post right lower extremity fracture and open reduction internal fixation (ORIF) surgery.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except the claimant can frequently climb; can occasionally stoop, kneel, crouch, and crawl; can frequently handle and finger with the bilateral upper extremities; can occasionally push and pull with the right lower extremity; and can never engage in repetitive flexion or extension of the right foot.

6. The claimant is capable of performing past relevant work as a claims examiner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2012 through the date of this decision.

AT 14-24.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly eliminated mental impairment at Step Two and beyond; (2) the ALJ improperly weighed the medical evidence as to physical limitations assessed in the RFC; and (3) the ALJ improperly discounted plaintiff's symptom allegations and a third-party function report.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Non-Severe Mental Impairment

Plaintiff asserts that the ALJ improperly eliminated mental impairment at Step Two, an error which affected the RFC and was not harmless.

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more

than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

At Step Two, the ALJ found plaintiff to have multiple severe physical impairments. AT 14. As to mental impairments, the ALJ wrote:

> The claimant's medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. The record showed the claimant was diagnosed with generalized anxiety disorder and depressive disorder and received counseling and medication treatment for such conditions (see Exhibit 16F, pp.6 and 170). The claimant's treatment consisted of routine, non-emergency medication review and some counseling (Exhibit 16F). There is no evidence to suggest the claimant was ever hospitalized for psychiatric treatment.
>
> Mental status examinations do not support the claimant's allegations of disabling psychological symptoms and show normal findings in most areas. Some examination notes showed the claimant had anxious mood, anxious affect, pressured speech, and tangential thought process (Exhibit 16F, pp. 9, 14, 51, and 77). However, the claimant's psychological symptoms were generally noted to be transient or mild. [Citations.] Further, the majority of mental status examination findings were within normal limits and supported that the claimant was generally oriented, alert, logical, and cooperative. [Citations.] Based on the claimant's cooperative and routine treatment and transient to mild symptoms, I find the alleged mental impairments nonsevere.

AT 15.

The ALJ gave "partial weight" to the opinions of two consultative examiners, Dr. Kiefer and Dr. Regazzi. AT 16-17. As noted by the ALJ, Dr. Kiefer, who examined plaintiff in September 2013, diagnosed plaintiff with a Global Assessment Functioning (GAF) score of 60[2],

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id. A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id. A GAF of 71-80 indicates that symptoms are transient and expectable reactions

indicating moderate symptoms or difficulty functioning, and opined that the likelihood of her "emotionally deteriorating in the work environment is moderate." AT 15-16; see AT 703-707. However, Dr. Kiefer also assessed plaintiff with "fair abilities . . . consistent with the mild findings from the treatment record[."] AT 16; see AT 703-707. The ALJ concluded that Dr. Kiefer's determination that plaintiff was moderately likely to be emotionally impaired at work was not consistent with "the generally normal examination at the consultative examination." AT 16; see AT 707 (assessing plaintiff with "good" to "fair" functional abilities, aside from a "moderate" risk of emotional deterioration at work).

The ALJ also gave partial weight to the opinion of Dr. Regazzi, who performed a psychological evaluation of plaintiff in July 2015 at the behest of plaintiff's attorney. AT 16-17; see AT 2117-2121. As noted by the ALJ, Dr. Regazzi found plaintiff moderately limited in the ability to maintain regular attendance in the work place; perform work activities on a consistent basis; complete a normal workday or workweek without interruptions; and deal with the usual stresses encountered in a competitive work environment. AT 17; see AT 2120. However, the ALJ concluded that "the degree of moderate limitations assessed by Dr. Regazzi is unsupported by the treatment record showing the claimant's mental status examinations were within normal limits with symptoms presented noted to be only transient or mild."[3] AT 17.

The ALJ gave significant weight to the opinions of State agency consultants, who found plaintiff to have mild restrictions in the activities of daily living, mild impairments in social functioning and concentration, and nonsevere mental impairments. AT 17; see AT 105-106, 116 (Dr. Schwarz); AT 132 (Dr. Kerns). The ALJ also gave significant weight to plaintiff's

---

to psychosocial stressors (e.g., difficulty concentrating after a family argument), resulting in no more than slight impairment in social, occupational, or school functioning. Id.

[3] Plaintiff's medical record contains numerous GAF scores showing mostly slight, transient, or mild symptoms. She had a GAF score of 71-80 seven times in 2014 and 2015 (AT 2172, 2198, 2237, 2253, 2260, 2284, 2289); and a GAF of 61-70 three times in 2014 (AT 2131, 2181, 2222). The record reflects numerous normal mental status examinations. AT 563, 580, 598, 686, 756, 782, 791, 2130, 2253, 2284. But see, e.g., AT 705 (mood sometimes tearful, low affect in July 2015); AT 2236 (mood dysphoric in July 2014); AT 2301 (mood dysphoric but mental status otherwise normal in July 2015).

"routinely high" GAF scores as reflected in the treatment record. AT 17; see n.3, supra. The ALJ also considered plaintiff's activities of daily living, finding that she was capable of self-care, cooking, housekeeping, cleaning, personal grooming, and that her tasks "reflect relatively normal levels of activity and, as such, only mild limitation in this functional area." AT 18; see AT 705.

At Step Two, the issue on review is "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [plaintiff] did not have a medically severe impairment or combination of impairments." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). Plaintiff argues that the ALJ "cherry-picked" medical evidence to support a finding of nonsevere impairment, discounting the consulting examiners' findings of moderate limitations in some areas and evidence of plaintiff's "anxious mood, pressured speech, attention/memory/ cognitive problems, and tangential thoughts." See, e.g., AT 2130 (mood anxious and thought process tangential in January 2014); AT 2172 (presents with anxiety and sleep issues in March 2014). However, the undersigned concludes that the ALJ adequately considered and summarized the mental health record as set forth above, and that the finding of nonsevere mental impairment is supported by substantial evidence. The court similarly finds no error in the absence of mental limitations in the RFC, as the ALJ noted plaintiff's testimony of her alleged mental impairments, found her less than fully credible (as discussed below), and reasonably determined that the medical evidence did not "support more restrictive functional limitations than those assessed herein." AT 19-20, 23.

B. Physical Residual Functional Capacity

Plaintiff asserts that the ALJ's finding that she could perform a limited range of light work was not supported by substantial evidence.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and

subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

The RFC limited plaintiff to light work with limitations as to climbing, stooping, kneeling, crouching and crawling; handling and fingering with the bilateral upper extremities; pushing and pulling with the right lower extremity; and repetitive flexion or extension of the right foot. AT 19. Plaintiff asserts that the ALJ "fabricated this expansive, nondisabling physical RFC," citing the following passage in the decision:

> As for the opinion evidence, significant weight is given to the assessments of State agency medical consultants (Exhibits 1A, 2A, 5A, and 6A). It was determined that the claimant's alleged physical impairments were not severe. The medical consultants have the benefit of reviewing the records and they are familiar with the requirements for determining disability pursuant to the rules and regulations of the Social Security Act. Moreover, <u>their assessments were reasonable when considering the medical records submitted at the time of their respective reviews</u>. However, <u>based on subsequently submitted evidence</u>, I find the claimant's symptoms from her status post ankle surgery, cervical and lumbar spine conditions, and carpal tunnel syndrome are more appropriately accommodated by the light residual functional capacity with additionally [sic] postural and manipulative limitations assessed herein.

AT 23 (emphasis added).

In previous pages, the ALJ summarized the evidence of physical impairment, including plaintiff's testimony that she was disabled because of her back impairments, ankle impairment, and carpal tunnel syndrome (AT 19); the medical record of "conservative treatments including medication and injection therapy" for her back and 2008 diagnostic imaging revealing "generally mild findings" as to her spine (AT 20-21); spinal MRIs from 2014 and 2015 (AT 21); and a musculoskeletal examination in 2014s showing plaintiff "to have a decreased lumbar range of motion and mild scoliosis, but her toe and heel walk, gait, squat, and straight leg test were normal." AT 21; <u>see</u> AT 843. Another 2014 examination similarly showed plaintiff to have a decreased range of motion in the lumbar spine and decreased weight-bearing ability on the lower right extremity, but her gait and leg strength were otherwise normal. AT 21; <u>see</u> AT 1163.

8

The ALJ cited additional 2013 and 2014 medical records of "minimal findings" and "conservative and routine treatment," including medication for back pain until such prescriptions were terminated due to drug seeking behavior. AT 21. The ALJ concluded that the evidence of spine impairments "suggests she is limited to work consistent with the [RFC] herein. However, a finding of disability is not appropriate." AT 21.

In July 2014, plaintiff injured her right ankle and had an open reduction and internal fixation (ORIF) surgery to repair the fracture. AT 21; see AT 1209, 1221. "Post-ORIF treatment records revealed the claimant continued to experience residual symptoms; however, such symptoms were noted to be common and were treated with conservative measures," the ALJ wrote, summarizing medical evidence from 2014 and 2015. AT 22. The ALJ concluded that this evidence supported the restrictions assessed in the RFC, but did not warrant a finding of disability. AT 22.

The ALJ also summarized the medical evidence as to plaintiff's carpal tunnel syndrome, diagnosed in February 2014. AT 22; see AT 992-994. The ALJ noted that subsequent treatment records indicated plaintiff's carpal tunnel syndrome was mild, citing a March 2014 record. AT 22; see AT 1029. The ALJ found this evidence reflective of the manipulative limitations assessed in the RFC. AT 22.

As to opinion evidence, the ALJ gave "significant weight" to the assessments of State agency physicians. AT 22. In September 2013, Dr. Pham reviewed plaintiff's records, including a 2008 imaging study, and noted that they showed normal findings in January 2013 and May 2013, and no abnormalities other than reported back pain in June 2013. AT 103-108. Dr. Pham noted "at least medium RFC" (AT 105) and concluded that plaintiff could stand and walk six hours per day, sit six hours per day, lift and carry up to 50 pounds occasionally and 25 pounds frequently, frequently stoop, and perform all other activities without limit. AT 107-108. In March 2014, Dr. DeSouza reviewed plaintiff's records, noting normal musculoskeletal findings and affirming Dr. Pham's opinion that plaintiff's impairments were non-severe. AT 130-131.

Though the ALJ claimed to assign significant weight to these opinions, he did not assign a "medium" RFC as they would suggest. Rather, the ALJ revised the RFC based on later-submitted

records that the State agency physicians did not review, including all the records concerning plaintiff's July 2014 ankle fracture, surgery, and treatment. AT 23; see, e.g., AT 22. Based on this new evidence, the ALJ found plaintiff more limited than the State agency physicians had determined. Plaintiff has not shown how any error in this regard harmed her. The ALJ also considered the third-party statement of plaintiff's friend Richard Martinez, though he assigned it little weight as inconsistent with the preponderance of medical evidence. AT 23.

Plaintiff points out that no treating source provided an opinion on plaintiff's functioning. However, the medical record is voluminous, and the ALJ had sufficient information on which to base his RFC determination. See Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). While the medical evidence was subject to rational interpretation by the ALJ, it was not so ambiguous as to trigger a duty to develop the record further. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The court finds no error on this basis.

### C. Credibility

Lastly, plaintiff asserts that the ALJ improperly discounted plaintiff's subjective symptom allegations and a third-party function report.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

At the July 2015 hearing, plaintiff testified that she experienced "constant" pain in her lower back and neck. AT 63-64. She testified that her carpal tunnel syndrome caused her to drop things when she was "washing dishes or brushing my teeth, any fine dexterity movement" and when she held any item larger than a water glass. AT 65, 71-72. Plaintiff testified that she could only sit in one place for an hour without experiencing pains down her right leg and shooting pains in her back, and that she spent twelve hours a day lying down. AT 66-67. She testified that she could only stand for five minutes. AT 67. She testified that she was forgetful and anxious and experienced a feeling of tightness in her chest and the inability to breathe three or four times a week, lasting up to an hour. AT 80-81. The ALJ summarized this testimony, including plaintiff's assertion that she was unable to work due to these impairments. AT 19.

The ALJ found plaintiff less than fully credible as to her subjective symptoms. AT 20. First, he found her allegations unsupported by the objective evidence of record (discussed above as to mental and physical limitations). AT 20-22. Second, he noted that plaintiff's claims of disabling pain were not consistent with the "conservative and routine treatment" she received for

11

her back issues and the "common . . . conservative measures" used to treat her ankle issues after surgery. AT 21-22. Third, the ALJ noted plaintiff's ability to perform daily activities was inconsistent with her claims of disabling functional limitations. AT 20; see AT 705, 2118. The undersigned concludes that the ALJ used the proper process and provided proper reasons for finding plaintiff less than credible about the severity of her symptoms.

The ALJ also considered the third-party function report of plaintiff's long-term friend Richard Martinez, who wrote that plaintiff at times had difficulty dressing, cooking, and bathing; that her depression and anxiety had worsened over time; and the combined effect of her mental and physical ailments had led to diminished functioning in a number of areas. AT 369-377. Mr. Martinez also noted that plaintiff cooked, helped him with legal matters, took care of a dog, did household chores when she felt up to it, shopped, paid bills, drove during the day, swam occasionally, and could walk three blocks without resting. AT 369-377. The ALJ found that significant weight could not be given to Mr. Martinez's statement because, among other reasons, "it, like the claimant's, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." AT 23. "Where the ALJ has first found a claimant not credible, the ALJ may subsequently reject lay testimony because it essentially reproduces the claimant's testimony." Lee v. Astrue, 2010 WL 5662964, *8 (D. Or. Oct. 27, 2010), citing Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009). The court finds no error on this basis.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated: September 18, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/thompson0584.ssi.ckd